Thank you, Judge Greger. May it please the Court. Scott Barton, Gibson Dunn, on behalf of Mr. Gene Germain. This case, at its most fundamental level, calls for application of well-settled rules governing summary judgment. The District Court's decision to grant summary judgment against Mr. Germain on his conditions of confinement claim and his deliberate indifference claim rest on violation of two core principles that have been settled for summary judgment purposes for decades now. The first, the District Court concluded in the defendant's argument that their attempt to transfer Mr. Germain into a double cell was the result of a reasonable medical judgment, even though the record has no evidence at all to support this assertion, a point that was confirmed on appeal by the other side's reliance on an affidavit that was submitted in a different case, not this one. The second flaw is that the District Court rejected both of Mr. Germain's claims that are presented in our brief only after disregarding his affidavit and other submissions on the theory that those materials were contradicted by the other side's own evidence, essentially making a credibility determination that they will accept materials prepared by the defendants or by their subordinates rather than crediting Mr. Germain's affidavit. And again, that's contrary to settled principles of summary judgment law. The truth of affidavits is not to be determined on summary judgment. So I'd like to discuss both of the two claims that are presented, the deliberate indifference claim and the conditions of confinement claim in turn. There's no dispute that Mr. Germain has an anxiety disorder, and so the issue then is the appropriate treatment, or in this case, the lack of appropriate treatment for that. And there are three pieces of evidence that the other side has adduced to suggest that when they attempted to transfer him into a double cell, that was the result of a medical judgment rather than deliberate indifference. So I'd like to discuss those in turn. Well, aren't there three options here? It's either considered medical judgment, deliberate indifference, or negligence, and if mere negligence, you lose, right? That's correct, that under the relevant standard, it has to be more than negligence. I would argue that if there was no medical judgment at all, that that's a failure to treat, and therefore, more than just mere negligence. They were aware of a need to treat Mr. Germain for his anxiety disorder . . . Well, but there's some . . . and I know that you can test the court's ability to consider this evidence, but I understood the record to include some indication, some medical evidence that suggested that there was no basis, based on a prior lawsuit that had been filed by the court, that there was no basis for continuing this single cell option for your client. Sure. I assume, Judge Diaz, you're referring to the declaration by Dr. Holwager, or Holwager, I'm not entirely sure how to pronounce it. The difficulty for the other side on this point is that that's simply not part of the record in this case, and so Rule 56 is clear in multiple places that a decision to grant or deny summary judgment has to be based on the record before the court in the particular case. And so, whether or not there might have been evidence that the other side could have presented that would have suggested that this was a medical judgment, it just wasn't presented. And so, Mr. Germain was never given the opportunity to contest this evidence or to explore it, to depose Dr. Holwager. It's actually important to note that he was, at the time of the earlier lawsuit, and this was, at the time of his trial, April 25th, 2010, he was the head of psychology at the institution. He apparently is no longer, so there's now an acting head. So there could have been any number of reasons why that was not presented in this particular case, including that they could no longer control to some extent his deposition testimony were he deposed. So for whatever reason, the other side elected not to present that testimony. Therefore, it can't be a basis for concluding that the decision to transfer him to double cell status was a medical judgment. And tellingly, the district court didn't rely on that. Fair enough. Good point you make. But let me ask you this question. He says no medical judgment, and you can't go outside of the Rule 56 record, right? That's your position? Yes, sir. All right. Well, the medical diagnosis is what? The medical diagnosis is an anxiety disorder. Right. It's a DSM-III diagnosis of anxiety. Now, what is the prognosis? I'm not sure entirely what you mean, Judge Gregory, by the prognosis. Well, you have a diagnosis, but there's no prognosis, is there? Prognosis in terms of, as we look forward, what is going to be the path of this treatment? What's the treatment? Sure. Well, I think that's actually the issue. What is the treatment? What's the record say that the treatment that's been prescribed for that diagnosis? What is it? Sure. Well, all we know on this point is Dr. Lillard's notes after Mr. Germain's suicide attempt. And what he says is 90 days of single selling with the intent that maybe he would select a cellmate afterwards. And so, there's never been a- So, after we get past the 90 days, what medical evidence is there that the treatment for his anxiety is a single cell? We simply don't know what the relevant treatment would be. That's actually a failure in the other sides of the treatment. No, no. It's your burden. It's your burden to establish that they have treated you for, or have either failed to treat you, or incorrectly treated him, and a gross negligence. Well, what is it that they're supposed to do as relationship to his diagnosis? Well, they're supposed to assess whether his confinement in a single cell, which had been the prescribed treatment for 13 years, should be continued. But just because they allowed him to stay there for 13 years doesn't mean that that's required for the treatment of his diagnosis. So, you can't have your cake and eat it, too. What do you have in the record that says, after that 90 day period, that single cell incarceration was required to treat his diagnosis? Well, importantly, there are really two different inquiries here. So, the answer is nothing? No, Your Honor. I would, again, point to Dr. Lillard's recommendation, which it isn't. 90 days to be there? 90 days, with the understanding that there would be a re-evaluation. I mean, that's the difficulty. I mean, this Court has made clear in Bowering v. Scodwin. So, they're negligent for not re-evaluating him? Well, just to be clear, you know, we're focusing on two things, really. There's both an injunctive relief claim, which is the going forward claim, but what we're really talking about in this case for the damages component is the decision on May 31st to transfer him to single cell status. Well, what was that contrary to? Well, it was contrary to the fact that he was, at the time, detained in a single cell, and that the only relevant medical evidence, which was the next day, was that he should still be in a single cell for treatment for his disease. Wasn't that beyond the 90 days at that point? No, Your Honor. So, the 90 days would have started on June 1st, 2011, and so this was a, the 90 days would have expired in September 2011, well after the time period that we're talking about here. And when was he not in a single cell? Well, so he was transferred to a contingency cell on May 31st because he refused double cell assignment. Right. He was never put in a double cell, was he? That's correct, Your Honor. So then you don't have damages? No, Your Honor. He was threatened with double cell status. He was threatened, but you don't have damages because you can't show that he was removed from a single cell. No, Judge Gregory. When was he placed with a partner? He never was. Well, then where are your damages? The damages. I assume everything you say is correct, that he should be there. What is the evidence in the record? Well, the evidence, Judge Rarey, is that he was told that he would be housed in a single cell and committed suicide. He committed suicide as a result. But wait a minute, the point is though. He committed suicide? Sorry, attempted suicide. He is still alive. He attempted suicide, but he doesn't run the prison, right? He doesn't run the prison. That's correct, Judge Gregory. That's an administrative assignment. In the courts, we don't run the prison. You're here because you're saying that they did something that shocks the conscience. It's grossly negligent. It's inconsistent with his medical diagnosis. You've told us that this record says he has anxiety. That's why I'm asking you, what did they do under this record that you presented that was contrary to a medical treatment? Because I haven't, by the fact that we can't go in there because I'm assuming you're correct, we can't look at the record because we looked at the record. There are all kinds of things to say that he didn't even meet the qualifications for a single cell. Putting that aside, what is the evidence that they treated him inconsistent with a medical diagnosis? The problem is not just that they treated him inconsistent with a medical diagnosis in the sense that their decision to transfer him was inconsistent with what Dr. Liller ultimately said. It was that despite knowing that he had an anxiety disorder, which had previously, not just on May 31st, but had previously caused him to attempt suicide, they didn't evaluate him before deciding to move him. That was negligence, wasn't it? No, I consider it more than that. Actually, Delonta v. Angelone is directly on point. 330F3rd at 635. The court said, there's nothing in the record that suggests that in the face of a particular disorder that the denial of the requested treatment was based on medical evidence. But there wasn't. Judge Gregory pointed out there wasn't a denial of a requested treatment because your client was never moved into a double cell. Well, no. He requested to be maintained in a single cell. They said, you're going to go into a double cell. When he refused, they put him in a contingency cell. And the word contingency, I think, is very similar. It's still a single cell. Well, it was a transition cell to put him in a double cell. So there was the constant threat and the anxiety. Doesn't that sound fairly reasonable? Well, I mean, the first thing you say is they are trying to put him into a double cell. Or threatening to put him, Judge Blake. Threatening, if you could use whatever word, but they don't do it. They don't put him in one. And instead, well, let me ask you this question. Are there circumstances under which the prison officials would be justified in moving into a double cell? I mean, if they follow this treatment plan, would they not be justified then to do it? It's possible that there are circumstances under which. And isn't that what this is? You know, to put him in a contingency cell is then to determine if there is a treatment plan that would permit him to move into a double cell. Well, Judge Wynn, they need to determine in advance that this is the appropriate treatment. It's not a matter of trying to transfer him first and then making up a treatment plan. There's no intermediate step. You've got to leave him over there in a single cell while you go through this. You can't have a contingency cell, which is conditioned upon the determination of whether there's medical evidence to suggest that he should go now into a double cell. It seems entirely reasonable. I mean, from that perspective, from your perspective, had they just thrown him into this double cell and said, you're just going to stay in here, that's one instance, which seems to be what you really are trying to argue. But what happened here, that's not what happened. He made a protest about going into this double cell. They moved him to a contingency cell. Then proceeded to bring in medical personnel to make an evaluation as to whether, in fact, this individual could be transferred into a double cell. Judge Wynn, the problem is that they already decided to move him to the double cell, and it was only when he refused that assignment. They corrected it. Sure, you want to punish them for already deciding it but not doing it? Well, no, the difficulty is that when he resisted this, they didn't say, oh, you're right, we'll undergo medical examination. So they're going to punish officials for making a decision but not carrying it out? They did as much as they could to carry it out, short of actually bringing him into a double cell. They didn't. They took steps to move him to a contingency cell, whereupon he was able to then be subject to this treatment type determination to determine if, in fact, now, ultimately, is he back now in the single cell? My understanding is that he is in a single cell. Is he now in a permanent status for single cell or whatever it is that allows him to stay there? There's no effort now to threaten him to move him to a double cell. I don't believe that there is. So the system worked. Well, with one important caveat on the ongoing basis, which is that in the last litigation, they kept him in a single cell status until shortly after this court's opinion and then tried to move him into a double cell. We're only talking about this little contingency time here. We're talking about he was in there June 1st. He files a complaint just a few days later, once he's in this contingency cell. He was only there for 12 days. That's right. But right now, he's back in a single cell. That's right. And so we're focused for the damages component. What damage? Well, he claims $10,000 in damages from the defendants, resulting from, among other things, his attempted suicide as a result of the anxiety. And when did that claim arise? When he said that he was going to do it or when he attempted it? I would think the actual damages from the attempted suicide were when he attempted it. There were no damages. They say he had no injuries whatsoever to him. I would think that a jury could decide an appropriate amount to award for an attempted suicide brought on by delivering a defense. What's the basis for the claim? When do you establish the Eighth Amendment claim for an attempted suicide? Is it when he says it or when he actually does it? It's when he actually does it. So if he doesn't do it, you don't have a claim? He could say all day long, he could have every little instance in the world that established an Eighth Amendment violation, but if he doesn't attempt suicide, you don't have a claim? No, no. There could be different bases for the Eighth Amendment claim. Tell me about the bases here. Well, the exacerbation of his anxiety disorder, the attempted suicide, even the mental distress caused by the threat to... But I'm trying to understand, when does that arise? I mean, does it arise because someone has anxiety and say, I'm going to commit suicide? And that's enough. Every prisoner who has anxiety says, I'm going to commit suicide. He then goes in a cell, ties a sheet around his head, and then pulls his neck a bit and passes out. He then has a claim. Well, let's suppose that he didn't try to attempt suicide. I would submit that even then, if they were deliberately indifferent to his anxiety, then that would be a basis for a claim. But you're going to need more than here, more than simply saying, I'm going to attempt suicide and I've got anxiety, and then he doesn't do it, because you just said, even if he didn't, then he still has a claim. So every prisoner out there who has anxiety need only say, I am going to commit suicide, and if there's no action in result of that, he then has an Eighth Amendment claim for which he can seek compensatory and punitive damages. No, Judge Wynn. The obligation is to undergo a reasonable medical analysis to determine the appropriate treatment. And in other cases, the prison officials might undergo that analysis. The difficulty here is that there is no record evidence. But in other cases, there are far more facts that existed than what's here. In other cases, there might have been, we're distinguishing cases from prison abuse and beatings. In those other cases, nearly every one of them, they either died from the attempt to suicide or they had severe injuries. It's well settled in their cases in both this court and other courts of appeals that the fact that there are no permanent physical injuries is not sufficient to compensate. No injuries. That's known. I mean, I don't think you've alleged any injuries other than maybe he tied this thing around his neck. We alleged, Judge Wynn, that it exacerbated his anxiety disorder and in fact led to the suicide attempt. We have no evidence. That's just a statement. I understand that you can say stuff and generally on determining someone's judgment, we take it as true. But even in medical negligence cases, we need somebody to say that it's done that. I mean, none of those doctors said anything like that. Well, the doctors, there's just no evidence that they had a medical opinion at all, which gets to the Delanta case. My client provided statements under penalty of perjury in both his motion to supplement in the jury. Penalty of perjury? He'll be in jail for a long time. Yes, sir. Long time. The relevant significance of the penalty of perjury is that under... I understand what you did. Thank you. I guess we can hear the other side. All right. Thank you. Ms. Madison. Good morning, Your Honors. May it please the Court, Siobhan Madison for Appelese, the Maryland State prison officials in this matter. The issue before the Court today is whether Appellant Mr. Germain has provided sufficient evidence to survive the Appelese motion for summary judgment in this case on two separate issues. The first issue is the deliberate indifference to serious medical need claim and the second issue is the unconstitutional conditions of confinement claim. Now, with respect to the deliberate indifference claim, essentially Mr. Germain's entire argument rests upon the erroneous assertion that he is a permanent single-cell status inmate that's been directed as such by the psychology department. What the record actually shows in this case is that on May 31st of 2011, when the prison officials attempted to... or took steps to double-sell Mr. Germain, that he was not a single-cell status inmate per order of the psychology department but was in fact an inmate on disciplinary segregation and that his time was up on disciplinary segregation, the correctional officer came from disciplinary segregation, attempted to put him in a double-cell and he refused housing. Now, in the face of that, instead of forcing Mr. Germain into this double-cell, they took him to a contingency cell in order to determine whether or not his claim that he was a single-cell inmate was actually true. Well, that particular action there, when we go back to the reason that he was put in that single-cell of having been sexually assaulted and then stabbed the assaulter 100 times, we don't have before us why he was put in that single-cell but you pretty much can glean there's some real reasons he was put in that single-cell for 13 years. And, I mean, during that whole 13 years, nobody moved him to a double-cell and then there's this psychological evaluation, I guess. But it doesn't say the anxiety's gone, does it? Or whatever caused to put him in there, there's now a reason to put him in a double-cell. Well, Your Honor, the decision to move him from the disciplinary segregation unit in which he just so happened to be in a single-cell, that was a custody issue. He was put on disciplinary segregation for misconduct. Correct. And then the decision to move him to a double-cell was based on the fact that his disciplinary segregation time had elapsed. It was finished. It was time for him to go back into general population. So you considered that this man had been in a single-cell for 13 years? He goes to a disciplinary cell and I guess that's supposed to be a different environment now, putting back in a double-cell? Well, Your Honor, I think to say that it wasn't considered is not... It was ill-advised at best, was it not? You sort of figured that out by moving him to a contingency cell and doing evaluation and eventually moving him back. I don't think that harms you to go that direction just to say, well... Because you're talking about a decision and the question is whether it's a reasonable decision and maybe it was somewhat not the way to go. It might be negligence. But you didn't do anything. You didn't put him in a double. So why does it hurt you to go in that direction? Well, Your Honor, I think it's true and I think at the end of the day if you look at the nature of Mr. Germain's claim it's a deliberate indifference claim and it comes down to a medical decision, a medical judgment that was made on May 31st to put him in a double-cell. If you look at Dr. Lillard's notes on June 1st when he was evaluating him for suicide he goes through Mr. Germain's history quite at length so he obviously did consider the fact that he had been single-celled for 13 years at a different facility at JCI, we're not talking about at North Branch Correctional Institution which is where this incident actually occurred so I think that Dr. Lillard did in fact take that into consideration when he made the judgment change his mind and eventually come around and say well, maybe he goes back to a single-celled Well, Dr. Lillard explained to Mr. Germain that single-celling is not going to be your permanent status moving forward, there's nothing in his medical records to justify Where is he now? Mr. Germain is in a single-cell back on disciplinary segregation he has not been single-celled by order of the psychology department You don't have plans to put him in a double-cell? The plan is to when his time on disciplinary segregation comes up he will be taken off of disciplinary segregation I don't know where he'll be put He may have a claim for an entry here you haven't made a decision that he's going to go back to that single-cell he's seeking injunctive relief and other types of relief he has a valid claim seeking some type of injunctive relief if you haven't made a decision to put him back in that single-cell without some treatment plan being put forth I think asking the prison officials to permanently put him on a single-cell status is asking us to change our medical judgment it still boils down to a disagreement Just put him back to where he was is what I'm saying whatever status he was on before put him back there and then go through the treatment plan there is this even the other side recognizes the possibility you could then transfer but what you're telling me he's down to disciplinary status and at the end of it he very well could go back into this double-cell because you haven't made an evaluation any different than what's here Well every time he comes off of disciplinary segregation an evaluation is made as to what is the proper housing for a prisoner that comes off of disciplinary segregation he continues to refuse housing he'll be put back on disciplinary segregation he's never been put in a double-cell this entire time I thought that was helpful the fact that he's never been put in it you sort of recognize that you've got to put him back in a single and then maybe you can go through a treatment type determination independent of all of this and make a determination based upon where he's been for 13 years now he can be moved but it seems as though what you're saying is he was moved from contingency back to a disciplinary why is he in a disciplinary cell I mean I don't know exactly what the reason he has an unrelated conduct to what's going on here or is it because at the end of 12 days he was taken out of contingency was he put immediately into disciplinary cell or was he then transferred back to the single cell at the expiration of the you're talking about June 12th June 12, 2011 was he put back into the single cell or was he put in a disciplinary cell no he was put in a single cell and then since then he has been transferred to a disciplinary cell that's correct based on his extensive infraction history I don't know about what's going on now I'm only interested in the fact that he was put back in that single cell but your point would be once a person comes from a single cell where he's been for 13 years when he goes to a disciplinary cell you can do an evaluation that says well I don't want to move him back to a single I can put him to a double that's correct because he's in disciplinary cell I think it's operating under the assumption that he has somehow been deemed a permanent single cell inmate and that's just there's no evidence in the record that that's the case and therefore any deviation from that you have the man a hundred times when he was in that cell with him the man had sexually assaulted him that was the basis apparently when he was put into the first instance is that not something that would indicate there's a reason he's in this single cell 13 years he's in there again your honor I think that we're not disputing that fact what I'm saying is that that fact is in the record it's in at joint appendix page 50 it's in Dr. Lillard's notes that he was aware of that fact and yet despite that that was his medical judgment that he can be double celled at the end of the day there's no medical nothing in this record that says medically he's required to be in a single cell is that correct there's nothing in the record at a maximum he suffers from anxiety about being celled with another inmate right and as long as you say I'm going to put you in a double cell then he's going to say well I'm going to kill myself if I go there I'm going to act up I suppose that's the record has been every time he thinks he's going to leave a single cell he protests correct? that's correct and then his injunction also hinges on a medical record too based on enjoying you from doing something contrary to a medical diagnosis or treatment correct? that's his theory that's correct our argument is that there is the prison officials are not acting contrary to anything that's in the record in fact what we've done if anything his argument is that we are deliberately indifferent by not providing him with medical treatment for his anxiety at all and I think that the record shows quite the opposite that we have done quite a bit to address his anxiety and to address his depression he's on medication when he refused housing instead of putting him in the double cell we put him in the contingency cell specifically for the purpose of deciding whether or not his claim that he should be single celled was actually true and on January excuse me June 1st he was assessed by Dr. Liller for suicide monitoring and he's been consistently seen by the psychology department and treated with psychological drugs and I actually understand what you just said he was put in contingency cell to decide if his claim to be in the single cell was true and then at the end of 12 days he something was decided because you just told me he was put back in single cell that's correct so then as a result of the contingency cell there was an evaluation that determined he should go back to single cell he was let me see if I can back up for a minute on May 31st his time on disciplinary segregation had expired they attempted at that point to move him to a double cell he refused to be placed in that double cell the normal course is pretty narrow on this question because you just you brought this up right then you said he was put in contingency cell and for the purpose of determining whether he should go back to a single cell at the end of 12 days somebody made a determination he goes back to a single cell temporarily put back in a single cell for 90 days that was Dr. Lillard's determination the determination to put him in a contingency cell was not so that some evaluation could be done whether he would be a single cell inmate it was because he articulated to the correctional officer hey I'm not supposed to was he then to be continually evaluated for purposes which I guess it doesn't matter whether it's 90 days because you can put him back in a single cell and conduct whatever evaluation to make a determination for him to go to a double cell it doesn't have to be 90 days it could be any day so the question becomes which I don't know where we are in terms of that because these are all facts that are developing even this disciplinary business is developing now where do we decide this case did we decide it on the basis of what's going on in front of us on the record or now we're listening to the fact he's now in a disciplinary cell he could be put somewhere else in the future because he's asking for injunctive relief which is he is entitled to be put in this single cell permanently that's one relief he's asking for how do we get around that I think the answer to that question is that he is not entitled to that relief because he's asking us to prescribe him a different type of if you will medication than what the doctors have already decided he's entitled to so he doesn't have any there's not a claim for that it doesn't rise to the level of a constitutional challenge permanent cell single cell sounds like it's kind of a misnomer to me because in fact he could be taken out of there if the proper psychological evaluation and medical evidence is made at a time he can be taken off that status is that right that's correct I mean I think you have to look at this as a fluid situation I mean people's mental status and their health this sounds so simple to me just put it back into this single cell conduct a psychological and medical evaluation as to whether he can go to a double cell doesn't that sound like that's the answer to this whole well your honor I think that Mr. J. Marion's argument is that he's never been evaluated and so how can we possibly make not put him in a single cell but Mr. Jermaine has been many times evaluated he's ongoing in the psychology department he's a regular patient in the psychology department he's seen for depression he's treated for depression he's seen and treated for anxiety and so the fact the assertion that he is somehow not being assessed is just not accurate and it's not supported by the record can I ask you a question about this conditions of confinement in the contingency cell because the defendant the inmate in this case made a number of specific claims with respect to the conditions of confinement some of which the district court addressed some of which he apparently ignored and I'm wondering what are we to do about that and specifically with respect to the conditions related to the facilities and the toilet and the fact that he was forced to spend time in a cell with a toilet that was overflowing he was deprived of toilet paper and the like the district court addressed some of the claims with respect to not eating the insect infested jail cell but said nothing about the others and what are we to do about that? I think your honor what the district court did was to say that Mr. Jermaine failed to offer any evidence that he suffered an actual injury which is what the law requires that he prove not so much that one part of it is that the conditions were some sort of deprivation but that deprivation actually resulted in an actual injury and the district court's finding. Aren't there some cases that hold that if in fact the deprivation is severe enough that an injury may be presumed or may not even be necessary? Well your honor I think that the that the holding here in Strickler is that that's quite possible but that certainly doesn't govern this case as the law stands now he must prove actual injury and that's something that he has not done So would we assume that from the district court's order even though he didn't address those specific conditions? I'm sorry assume? Assume that that was the holding of the court even though he didn't specifically tick off all of the particular conditions that the prisoner complained about? I think the holding is and what the district court relied on in granting summary judgment was that Mr. Germain failed to show that he suffered any actual injuries and if I can by way of example Mr. Germain goes on and on in his brief about how he filed this affidavit that says that he lost 23 pounds and that this was some sort of impermissible credibility determination for the district court to rely on the medical evidence in discrediting that weight loss and I think what the district court did was not so much to discredit the 23 pound weight loss which would be improper but to say that in light of the record as a whole in this case that that 23 pound of weight loss if it occurred was not attributable to the conditions of his confinement Even so is there any evidence that your client, the prison officials knew about those alleged conditions? No there's no evidence in the record whatsoever that they were aware of the alleged conditions that they were aware of this 23 pound weight loss Did he tell someone of this before then? Is there any evidence that he told someone about this? There's no evidence in the record at all that any of the prison officials knew that the conditions in this contingency cell were as he describes them. Isn't that the simple answer to everything you've just said? They don't know about it Yes your honor and that certainly without that type of knowledge any conditions that he would allege that would certainly not rise to the level of an 8th amendment challenge If the court has no further questions I will No further questions thank you Mr. Martin you have your time Thank you Judge Gregory I have a handful of quick points on deliberate indifference before I return to the last subject of conversation on conditions of confinement The assertion that Mr. Jermaine asserts a pertinent single cell status is inconsistent with the pleadings. I direct the court to J17 where the request is single cell status until an evaluation can be performed and that's the real issue here The other side said on a number of occasions that he's been consistently seen or he's been seen many times to determine There seems to be some contention that what you are asking for this evaluation before him that the other side seems to be saying has already been done That's what they say but they don't point the court to anything in the record The only piece of evidence identified by the district court was Dr. Lillard's note which appears on JA 50 which occurred after the initial decision to transfer him to double cell status in his movement to the contingency cell and therefore can't support that decision and also his recommendation wasn't double cell it was single cell for 90 days so that can't support the medical judgment. The other thing they said was Dr. Molden's note, that's JA 51, that doesn't contain any medical judgment at all of any sort. I mean it just reflects that she wants to move him to a double cell and your file reflects why but they've never sought to introduce the file to explain why, we just don't know and then the last part and we've discussed this earlier is the declaration from Dr. Holwager which simply isn't part of the record and so the fact remains that this record does not contain any evidence to support the claim made by to determine double cell status and that they've determined double cell status it's just not in the record. Why would you send it back to the district court to make a determination of whether there's been some evidence to show he's been evaluated and allow the district court now to consider evidence even since this hearing to determine whether that's been done? Your Honor, I think at a minimum that's the relief that should be granted but I think the court could go farther and should go farther. The other side had the opportunity to present whatever evidence was available to it in support of the summary judgment motion. The fact that they didn't do so means that they're not entitled to summary judgment and the result of that is a trial at which evidence can be presented and so although we think that at a minimum a remand is warranted we also think that reversal of the summary judgment decision and to send it back for further discovery and trial is the appropriate relief. If I could turn to the conditions of confinement claim, the other side asserts that actual injury is necessary and although we believe that actual injury has been satisfied here, the court has held on several occasions including in Smith v. Osmond and in Strickler v. Waters that there are certain deprivations that do not themselves require proof of actual injury. These are the conditions in that contingent Cecilia? Yes, Judge Wynn. What is the record evidence that this was made known to the prison officials? To be clear, the district court didn't address that issue but I would point the court to DE 17 Exhibit 2 and that is JA 80 which is a note from Mr. Germain complaining that he was being starved in the contingency cell. It's a sick call note from Mr. Germain. To whom? To the prison. I don't believe it identifies a particular recipient. Pardon? It was dated Sorry, we're having difficulty locating. I'll locate it as we keep talking. So there's a note that he's been sure it was dated before he filed that complaint on June 6. Well, it's actually dated contemporaneous with it. So this is JA 82. It's dated 66. He gave notice of the condition the same day he filed his complaint. Yes, Your Honor. And I think it's important to bear in mind that the conditions How are they going to fix it? Well, Your Honor, I think it's important to bear in mind that the conditions that he's complaining of here, including the presence of fecal matter and the starvation and weight loss are the types of injuries that would be known to the prison guards who were attending to him. Are they instantaneous? Well, no, Your Honor. The point is this is simply I find this an interesting argument because what you seem to be suggesting is that if he walks in the cell, sees this immediately, he doesn't have to say a word. He can wait for six days and then file his complaint and says, we've got these conditions. But it seems like that claim existed when he walked in under your argument. Two responses, Your Honor. The first, I think, is the district court didn't rely on any of these grounds. But to show deliberate indifference, you've got to show, you've got to at least indicate they knew something about being indifferent. You've got to know you're being indifferent. If he's sitting in the cell and he's got all these conditions going on and he's not saying one word to anybody and they're going on, who says they know about it? Well, I think that the issue is that the nature of the alleged... But he can file a complaint, but he can't tell them I've got a problem here, what's going on in this cell? That sounds incredulous, doesn't it? Well, no. I think that the issue is that the presence of fecal matter in urine in a cell is the type of issue that can be observed by... You tell someone, and then if they don't do anything about it, then it becomes indifference. But if it's in there, he's in the cell. And I don't know if the prison officials walk in and inspect his cell or whatever. He doesn't say a word about it until he files the same time he files a complaint. Is that the first evidence you have to show that the prison officials knew about it? No, Your Honor. I direct you to JA-13, which is a complaint filed under penalty of perjury, which alleges that Sergeant McAlpine, who is the officer in charge of the 7-3 shift, and one of the defendants here, refused to provide him shower or hygiene. And so the refusal embodies with it knowledge of the conditions... So the Eighth Amendment is because he couldn't take a shower. Well, it's the hygiene issue is the issue. I understand that, but that's because he can't take a shower. Well, no, it's actually... This is not dealing with the feces thing. He's not saying anything about the other stuff. This is only just the taking a shower. He referred to hygiene, and I think that in context... How long was it that he couldn't take a shower for? How long was it? Does it allege that? I do not know the answer to that, Your Honor. No, he filed his complaint on June the 6th. He hadn't been there since June the 1st, so no more than five days, which is a horrible time not to take a shower. I take that. It might have been actually until the 9th when he was in the contingency cell. I don't know the answer to that, Your Honor. Wouldn't it help if you wanted to establish the Eighth Amendment claim that you say, I couldn't take a shower, and it was hygiene to tell us how long you couldn't take that shower for? He was proceeding pro se before the district court, and I believe that his reference to hygiene, when it read in context to... His reference that the defendants were aware of the problems with hygiene, when read in context with his allegations that the cell was infested with fecal matter and urine, it has to be understood, or at least a reasonable jury could understand it. Fecal matter and urine business is something they became aware of when he filed the complaint. It's what I understand you said. This business he told the sergeant about the showering, it may have come, J18, may have come before then, and so I'm beginning to say, well, maybe there's something on the showering business, but I don't know how long the showering, when he told him, how long it had been there. Your Honor, I think that the critical word here is the hygiene point, and that that can be understood in context, or at least a reasonable jury could understand it. One who cannot take a shower will have a hygiene problem. Well, he actually refers to shower or hygiene, but yes, one who can't take a shower. Well, how long? Your Honor, I can't tell you the answer to that right now. It sort of helps. This is the Eighth Amendment. This is cruel and unusual punishment. This is not something you can just throw something out of and just say, well, let's just see what happens in the Eighth Amendment. I couldn't take a shower. Well, Your Honor, and we know this man has an anxiety problem. It could have been three, four hours he couldn't take a shower. We don't know what the situation is, but it seems as though there ought to be something a little more than that. I assume that affidavit that was prepared on a penalty of perjury, was that done pro se? Yes. His filings in the district court and actually his initial brief in this court were all done pro se. The issue in our brief we focused on is . . . What damages do you want for him not being able to take a shower? Well, the jury would be entitled to determine it. For all of the injuries together, he's asserted $10,000 from each of the defendants. He's going to get $10,000 for not taking a shower? Well, $10,000 for both the deliberate indifference and the conditions of conduct claims. Well, no, Your Honor. What are you going to sell this case, $10,000 for not taking a shower? How much do you want? Your Honor, he's actually claimed punitive damages as well for all of the conduct together. For how long? We know it's somewhere under five days. How much punitive damage do you want for that? To be clear, we don't know it's under five days because . . . Is it having a mole on him, any type of allergy developed on him, any type of sickness as a result of not taking a shower? I'm not aware of . . . He just didn't smell right, did he? Well, he was exposed to fecal matter and urine. Exposed, but any medical injury whatsoever? Well, yes, Your Honor. The evidence contains records . . . From not taking a shower? I don't know specifically how much you want. Nominal damage is enough? Five dollars enough for that? Your Honor, I'm not authorized to compromise my client's claim, but I can tell you that for all of the conduct alleged in the complaint, he's asserted $10,000 for each defendant, plus a million in punitive damages. I understand what he's asserted. I've just . . . We just narrowed this thing down. You just told me that he didn't even . . . There's no evidence the prison officials knew anything about anything except the shower before. So you got the shower before the Eighth Amendment. Judge Wood, I find it hard to credit the idea that the prison officials charged with that he doesn't flush, that he's not been given toilet paper. I mean, if he's not been given toilet paper, they know that he's not been given toilet paper. Tell somebody. If he doesn't get toilet paper, tell it. But he says there's no evidence he told anybody. Is that unreasonable? Well, Your Honor, it's not his obligation to complain. It's the . . . But you want to say they're deliberately indifferent. Indifferent to what? He's not in a hotel. He's in prison. Yes, but . . . If he's not getting toilet paper, tell somebody he's not getting toilet paper. Judge Wood, I think that withholding toilet paper and exposing him to toilets . . . It's a terrible thing. Yes, Judge Wood. If you tell someone and they don't give you some toilet paper. But if you don't tell anybody, and then you just file a complaint, you're not giving me toilet paper. Judge Wood, they would be aware that they were not giving him adequate conditions of confinement. I don't think he's under an independent obligation to complain. Now, perhaps, complaining could give rise to additional damages, but the deliberate indifference here is triggered by the refusal to provide adequate conditions of confinement, independent of . . . Thank you, Your Honor. Is there no further questions? Mr. Martin, no. Thank you so much, and again, we note that you're caught upon, and we appreciate your service, and the court could not do its function without your work, and we thank you so much for that, as well as we note Ms. Madison for ably representing your client. We'll take a break.
judges: Roger L. Gregory, James A. Wynn Jr., Albert Diaz